## McCALLA *v.* McCALLA.

Under the evidence in the case it became a question for determination by the jury as to whether the plaintiff had proved the case as laid by her petition, and the court should not have granted a nonsuit.

No. 5072.  December 17, 1925.

Equitable petition.    Before Judge Tarver.    Catoosa superior court.    August 3, 1925.

*Maddox, Maddox & Mitchell,* for plaintiff.

*Rosser & Shaw* and *R. M. W. Glenn,* for defendant.

Beck, P. J.    Miss Fannie A. McCalla brought suit in Catoosa superior court against H. C. McCalla as executor of J. C. McCalla, and in his individual capacity, alleging, in substance, that she was the owner, as an heir at law, of an undivided interest in certain

Cancellation of Instruments 9 C. J. p. 1258, n. 56 New.

27

lands in Catoosa County, Georgia; that J. C. McCalla, now deceased, sometime during the year 1918, entered into a verbal agreement with her for the purchase of her interest in said lands for the sum of $200, and paid thereon $35, it being agreed that J. C. McCalla was to subsequently pay her the remainder of the purchase price of $200, and also account to her for her portion of the overplus of the selling price of the lands when sold by him; that J. C. McCalla did not sell the lands nor account to her for hei part of the purchase-price, but, on the contrary, executed a will wherein he devised all of his interest in the lands to his brother, H. C. McCalla; that prior to the death of J. C. McCalla the defendant, H. C. McCalla, by stating to her that J. C. McCalla would be at her house within a short time and would pay her the balance of the $200 on the land, induced her to execute to J. C. McCalla an unconditional warranty deed to her interest in the land; but that said deed was executed with the understanding that she was to have her proportionate part of the overplus of the selling price of the lands when sold. A copy of the deed executed by plaintiff to J. C. McCalla, dated August 29, 1921, is attached to the petition. Plaintiff further alleged that H. C. McCalla had practiced fraud upon her by falsely representing to her that her brother, J. C. McCalla, was much better and would be up to her place in a few days, at which time he would pay the balance of the purchase-price of $200; that she executed the deed because of her faith in these false representations, and with the understanding that she was to participate in the selling price of the place when disposed of by J. C. McCalla to the extent of her interest therein; that said price of $200 was grossly inadequate for her interest in the land; that she had tendered to H. C. McCalla the money received by her on the purchase-price, and demanded the execution by him of a deed reconveying to her her interest in the land, which demand was refused by H. C. McCalla, who still so refuses. Plaintiff prayed for a decree cancelling the deed executed by her to J. C. McCalla. Defendant answered the petition, putting in issue all material allegations, and expressly denying the fraudulent procurement of the deed.

Plaintiff introduced as a witness her sister, Miss Lou C. McCalla, who testified that in December, 1917, plaintiff's brother, J. C. McCalla, had paid plaintiff $25 on the purchase-price of her inter-

est in the lands in question, and in December, 1918, had made a further payment of $10, under an agreement that he was to pay to plaintiff a total sum of $200 for her interest in the place, it being understood that when the place was sold plaintiff was to be paid the balance of her interest in the place, whatever it brought; that on August 31, 1921 (certain deeds having previously been mailed to plaintiff for execution), H. C. McCalla came to the home of plaintiff and told her that J. C. McCalla would be up in a few days to settle off and finish paying what he owed her for the place. The witness was uncertain as to whether the deed was written at that time or previously; but she testified that the deed was not signed by the plaintiff until the day after the visit of the defendant, and that plaintiff executed the deed in the presence of G. W. Head, and directed Head to mail it to defendant, which was done. On cross-examination the witness stated that defendant told plaintiff that John (J. C. McCalla) was sick, that defendant wanted to get the papers straight, and that John would pay the balance of the purchase-money later. The balance of the purchase-money was $165, which defendant never paid.

The plaintiff testified that defendant came to her house on August 31, 1921, and stated that John (J. C. McCalla) wanted the deeds fixed up to her interest in the Waterhouse place, and that he would be up in a few days and settle the bill off, but that she did not at that time expect J. C. to ever be there alive any more. On cross-examination she testified that when defendant came to her home the deed which had previously been mailed to her was on the mantelpiece; that defendant took it off the mantelpiece, and she signed it in the presence of defendant. She testified, however, immediately after the foregoing testimony, that the deed was carried to Tunnelhill and signed there in the presence of George Head, and that defendant was not present. She had received $35 on the purchase-price of her interest in the place at the time she executed the deed; and the signature to the deed exhibited to her was her signature. At the time she signed the deed defendant stated that her brother, J. C. McCalla, would be up in a few days and settle it off. The balance was $165. Defendant had proposed to pay the balance of the purchase-money to her, but she had declined it, stating that it was her father's property and defendant was not the one to pay it. On examination by the court the plaintiff testified that

she read the deed before she signed it, and thereafter affixed her signature thereto.

Plaintiff introduced S. P. Maddox, one of her attorneys, for the purpose of showing a tender to defendant of the money paid to her on the purchase-price of her interest in the land. Mr. Maddox testified that he made the tender of the $35 to defendant, conditioned that defendant sign a deed of reconveyance to plaintiff. Plaintiff also introduced certain witnesses for the purpose of showing the value of her interest in the land. At the conclusion of plaintiff's testimony the court, upon motion of defendant's counsel, directed a nonsuit, and the plaintiff excepted.

Cancellation of the deed was prayed on the ground that the defendant obtained the execution of it by fraud. It is claimed that the deed was executed for the purpose of placing title to the property in J. C. McCalla, who was to pay to the plaintiff a stated sum of money, and was to sell the land and pay over to the plaintiff her share. The instrument as drawn and signed is an unconditional warranty deed conveying the property to the grantee, J. C. McCalla; but the plaintiff contends that the conveyance was executed for the purposes set forth above, and that just before his death the grantee in the deed executed a will, wherein he bequeathed all of his interest in the land in question to his brother, the defendant in this suit, when in fact the deceased brother was not the owner of the land, though apparently title was vested in him by the deed which plaintiff seeks to have canceled. If for the purposes stated the plaintiff executed the deed to the decedent, and he in turn executed a will bequeathing this property to the defendant in this suit, and the defendant, knowing of these facts and knowing of the execution of the will, concealed from the plaintiff the fact of the execution of the will and its terms, and obtained the deed by representing to the plaintiff that the agreement as stated in the petition between the plaintiff and her brother, J. C. McCalla, would be carried out, then he perpetrated a fraud upon her, and the execution of the deed was obtained by such fraudulent practices as rendered it void and entitled the plaintiff to have it canceled. And under the evidence introduced in the case, it was for the jury to say whether, in consideration of all the evidence and the deductions which they were authorized to make therefrom, the plaintiff had established her case as set forth in her petition, and the trial

court should have submitted the question to the jury and should not have determined the case once for all against the plaintiff by the grant of a nonsuit. See *Jones* v. *McElroy*, 134 *Ga.* 857 (68 S. E. 729, 137 Am. St. R. 276), and the cases there cited.

*Judgment reversed. All the Justices concur.*